
**McCARTER &ENGLISH**
ATTORNEYS AT LAW

February 7, 2011

**BY ELECTRONIC FILING**

Hon. David N. Hurd
U.S. District Court
Northern District of New York
100 South Clinton Street
Syracuse, NY 13261-7367

Re: *Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co. et al.*
Docket No. 06-CV-1117

Dear Judge Hurd:

We represent plaintiff Fulton Boiler Works, Inc. ("Fulton") in the above-captioned matter. We write regarding the summary judgment cross-motions currently pending before the Court and returnable on February 25, 2011, and a related issue that has arisen since briefing closed on those motions.

Specifically, Travelers Casualty and Surety Company ("Travelers") has frustrated ongoing coordination and defense efforts in the underlying asbestos cases based upon its erroneous interpretation of New York law and, in particular, the decision of the New York Appellate Division in *Continental Insurance Co. v. Employers Insurance Co. of Wausau*, 871 N.Y.S.2d 48 (1st Dept. 2008) ("*Keasbey*"). *See, e.g.,* Exhibit "1," which has been redacted to protect privileged material. Although *Keasbey* was cited by some of the parties in their briefing on the cross-motions, it was not a focal point of any argument. We continue to believe that the case should not be a focal point now. Because Travelers is using its erroneous interpretation of that decision to impede defense efforts in the underlying cases, Fulton believes limited additional briefing on *Keasbey* is warranted.[1]

Accordingly, Fulton respectfully requests leave to file a five-page supplemental brief on the *Keasbey* decision. Fulton's proposed brief is enclosed with this letter as Exhibit "2."

Brian J. Osias
Partner

T. 973.639.6956
F. 973.297.3904
bosias@mccarter.com,

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07102
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

---

[1] We also note that despite the Court's March 25, 2010 Decision and Order, the defendant insurers have not and inexplicably refuse to fund 100% of underlying defense counsel's costs, which may be prejudicial to Fulton. The insurers are therefore in contempt of the Court's Decision and Order. Fulton reserves the right to file a motion to hold the insurers in contempt.

ME1 11098356v.1

Hon. David N. Hurd
February 7, 2011
Page 2

If Your Honor has any questions or requires any additional information, please do not hesitate to contact us.

Respectfully,

Brian J. Osias

Enclosures

cc: All Counsel of Record (by electronic filing)

# EXHIBIT 1



One Tower Square, 6FP
Hartford, CT 06183-6016

Brian Cocuzzo
Associate Account Executive
Special Liability Group
Phone: 860.277.6818
Fax: 860.277.1600

**Via Email and Certified Mail – Return Receipt Requested**

December 15, 2010



Fulton Boiler Companies
3981 Port Street, Box 257
Pulaski, NY 13142

Attn: Mr. Michael R. Simmons

Re:    Policyholder:    The Fulton Boiler Works, Inc. ("Fulton")
       Plaintiff:    Ismenia Gonzalez
       File Number:    772 ER A9I9891 J
       Lawsuit:    *Ismenia Gonzalez v. A.O. Smith Water Products Co., et al. (including Fulton Boiler Works, Inc.)*, Supreme Court of the State of New York, County of New York, Index No.: 190298-09 (the "Lawsuit")

Dear Mr. Simmons:

As we understand from Suzie Halbardier's November 26, 2010, report, the Lawsuit remains stayed and no trial date is scheduled. Ms. Halbardier suspects that Justice Friedman, who is presiding over the case, will schedule a conference when the stay is lifted in an attempt to facilitate settlement negotiations between Fulton and plaintiff. Ms. Halbardier ███████████████████████

Travelers will continue to participate in Fulton's defense of the Lawsuit. However, as Travelers has informed you and your counsel previously – in our August 26, 2010, conference call and otherwise – under prevailing New York law, it is Fulton's burden to demonstrate that there was injury-in-fact during Travelers policy period before an indemnity obligation is owed by Travelers. Accordingly, unless and until Fulton demonstrates that the plaintiff sustained injury-in-fact during the time period that Travelers issued polices to Fulton, Travelers has no duty to indemnify Fulton in the Lawsuit.

Travelers remains willing to continue exploring options by which Travelers, Fulton and the other carriers may reach a mutual agreement to resolve this issue and others central to the ongoing declaratory judgment action.

This correspondence is not intended to be, nor shall it be construed as an exhaustive listing of policy terms, conditions or exclusions which might preclude coverage for the captioned matter under our policies. We reserve the right to supplement this correspondence.

Page 2

Please contact me should you have any questions.

Sincerely,

Brian Cocuzzo
Associate Account Executive


Copy:  Graham Curtin, P.A., attn: Mr. Stephen Gimigliano, Esq.
       Travelers SLG – Hartford, attn: Mr. Jerry Begley, Esq.
       McCarter & English, attn: Mr. Brian Osias, Esq.

Page 3

Copy: Graham Curtin, P.A.
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962-1991

    Attn: Mr. Stephen Gimigliano, Esq.


Travelers Special Liability Group
One Tower Square – 8FP
Hartford, CT 061813

    Attn: Mr. Jerry Begley, Esq.


McCarter & English
Four Gateway Center
Newark, NJ 07102

    Attn: Mr. Brian Osias, Esq.



**From:** Kathleen Koval [mailto:kkoval@resolute-ne.com]
**Sent:** Friday, February 04, 2011 11:42 AM
**To:** Mike Simmons
**Cc:** Tricia Daziel; flandea@nationwide.com; Kathleen Koval
**Subject:** RE: NY/Fulton Boiler/Gonzales, Ismenia (Nationwide #MOO666419)

Mike, As Travelers has refused to participate in the settlement of the above-referenced matter as noted below, please advise if Fulton will cover Travelers 17.45% share █████████
████████████████████████████ Thank you for your attention to this matter.

Kathleen Koval
Resolute Management Inc.
617-499-3989 (phone)
kkoval@resolute-ne.com

**From:** Cocuzzo,Brian [mailto:BCOCUZZO@travelers.com]
**Sent:** Thursday, January 13, 2011 2:55 PM
**To:** 'Suzanne Halbardier'; Kathleen Koval; Tricia Daziel; 'flandea@nationwide.com'
**Cc:** 'Mike Simmons'; Begley,Gerald Francis; 'Robert Mauriello'; 'Stephen Gimigliano'
**Subject:** RE: NY/Fulton Boiler/Gonzales, Ismenia (Nationwide #MOO666419)

All,

Travelers is not extending settlement authority for the *Gonzalez* case. Please see attached letter to Fulton dated 12/15/10.

Thanks,

**Brian Cocuzzo**
Travelers Special Liability Group
One Tower Square - 6FP
Hartford, CT 06183
T: 860-277-6818
F: 860-277-1600

2/7/2011

**From:** Suzanne Halbardier [mailto:shalbardier@bmmfirm.com]
**Sent:** Thursday, January 06, 2011 12:59 PM
**To:** 'Kathleen Koval'; Cocuzzo,Brian; 'Tricia Daziel'; flandea@nationwide.com
**Cc:** 'Mike Simmons'
**Subject:** NY/Fulton Boiler/Gonzales, Ismenia (Nationwide #MOO666419)

Happy New Year to All!

As an update on this matter, I appeared on Tuesday morning before Judge Rakower in connection with plaintiff's motion to lift the stay. You will recall that another defendant, Tingue Brown, had advised the parties that there was a stay in effect due to one of their carriers being placed into rehabilitation.

We were advised that an agreement was reached with Tingue Brown and Weitz to settle the matter for $425,000. The lawyer for Tingue Brown did not want to disclosure who was paying ███████

The stay will be lifted and the case will be remanded to Justice Marcy Friedman. My expectation is that she will ███████ For now we do not have a conference or trial date ███████ Justice Friedman has a trial scheduled in a group of Levy cases for March, and ███████

Suzie Halbardier
Barry, McTiernan & Moore
2 Rector Street, 14th Floor
New York, New York 10006
(212) 313-3600 (main)
(212) 313-3606 (direct dial)
(212) 608-8902 (fax)
shalbardier@bmmfirm.com

================================================================
This communication, including attachments, is confidential, may be subject to legal

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FULTON BOILER WORKS, INC., <br> Plaintiff, <br> -against- <br> AMERICAN MOTORISTS INSURANCE COMPANY; AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY; ONEBEACON INSURANCE COMPANY, as successor to Commercial Union Insurance Company, EMPLOYERS INSURANCE COMPANY OF WAUSAU; TRAVELERS CASUALTY AND SURETY COMPANY; and NATIONWIDE MUTUAL INSURANCE COMPANY, <br> Defendants. | Civil Action No. 06-CV-1117 (GTS/DEP) |
| AMERICAN MOTORISTS INSURANCE COMPANY; AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, and ONEBEACON INSURANCE COMPANY, as successor to Commercial Union Insurance Company, <br> Third-Party Plaintiffs, <br> - against - <br> EMPLOYERS INSURANCE COMPANY OF WAUSAU; TRAVELERS; and NATIONWIDE MUTUAL INSURANCE COMPANY, <br> Third-Party Defendants. | |

**SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF FULTON BOILER WORKS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO THE CROSS-MOTIONS FOR SUMMARY JUDGMENT OF CERTAIN INSURANCE COMPANIES**

**McCARTER & ENGLISH, LLP**
245 Park Avenue, 27th Floor
New York, NY 10167
Phone: 212.609.6800
Attorneys for Plaintiff
Fulton Boiler Works, Inc.

ME1 11098428v.1

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................1

    A.    Travelers's Interpretation Of *Keasbey* Contradicts *Stonewall* And, Thus, Must Be Rejected By This Court. ..............................................................................1

    B.    *Keasbey* Involved A Direct Action By Underlying Asbestos Claimants Against An Insolvent Insulation Contractor's Insurer In Which The Claimants Sought "Operations" Coverage As Opposed To The Products Coverage At Issue In This Action. ..........................................................................................3

CONCLUSION................................................................................................................................6

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Continental Casualty Co. v. Employers Insurance Co. of Wausau,*
   871 N.Y.S.2d 48 (1st Dept. 2008) ("*Keasbey*") .............................................................. 1, 3, 4, 5

*Dantuono v. Davis Vision, Inc.,*
   No. 07-CV-2234, 2009 U.S. Dist. LEXIS 122119 (S.D.N.Y. Dec. 29, 2009) ....................... 2, 5

*Keasbey Co. v. Employers Ins. of Co. of Wausau,*
   13 N.Y.3d 710 (2009) ........................................................................................................ 1, 2, 3, 5

*Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.,*
   73 F.3d 1178 (2d Cir. 1995), *modified on denial of reh'g,* 85 F.3d 49 (2d Cir. 1996) .......... 1, 2, 3

*Viking Pump, Inc. v. Century Indem. Co.,*
   2 A.3d 76 (Del. Ch. Oct. 14, 2009) ................................................................................................ 1

ME1 11098428v.1

## PRELIMINARY STATEMENT

During the pendency of these motions, Defendant Travelers Casualty and Surety Company ("Travelers") has obstructed defense counsel's strategy for resolving underlying asbestos bodily injury claims against Fulton Boiler Works, Inc. ("Fulton") by asserting reliance on the patently inapplicable Appellate Division opinion in *Continental Casualty Co. v. Employers Insurance Co. of Wausau*, 871 N.Y.S.2d 48 (1st Dept. 2008) ("*Keasbey*").[1] Travelers has told Fulton that it will not pay its share of any asbestos settlement or verdict unless Fulton proves that the individual claimant actually sustained asbestos-related bodily injury during a Travelers policy period.[2]

Travelers' position is entirely baseless for the following reasons that are well known to Travelers:

1. It contradicts binding Second Circuit law specifically holding that, with respect to asbestos-related diseases, a claimant's injury occurs from the date of first exposure through the manifestation of disease. *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1203-04 (2d Cir. 1995), *modified on denial of reh'g*, 85 F.3d 49 (2d Cir. 1996); and

2. *Keasbey* involved operations coverage, not the products liability coverage at issue in this case. Accordingly, as the *Keasbey* court itself noted, the decision is inapplicable.

## ARGUMENT

**A. Travelers's Interpretation Of *Keasbey* Contradicts *Stonewall* And, Thus, Must Be Rejected By This Court.**

As the Second Circuit held in *Stonewall*, New York courts apply an injury-in-fact trigger to bodily injury claims arising from exposure to asbestos.[3] For non-cancer diseases caused by exposure to asbestos, such as asbestosis and pleural plaques, the Second Circuit in *Stonewall* found that injury to the lungs happens from the time of exposure, during a latency period when the disease is not diagnosable, through the time of disease manifestation:

---

[1] *E.g.*, E-mail dated 1/13/11, from Brian Cucuzzo to Suzanne Halbardier, *et al.*, at 1, attached hereto as Ex. "A."
[2] *E.g.*, Letter dated 12/15/10, from Cocuzzo to Simmons, at 1, attached hereto as Ex. "B."
[3] 73 F.3d at 1194-97; *see also Viking Pump, Inc. v. Century Indem. Co.*, 2 A.3d 76 (Del. Ch. Oct. 14, 2009) (applying New York law).

ME1 11098428v.1

> [T]here is a period of time prior to the point at which asbestosis and pleural plaques are clinically diagnosable when the condition is evolving cumulatively or incrementally. This period when the asbestosis or pleural plaques develop undetected is the latency period, which is normally 15 years and may be as long as 40 years. The latency period begins at the time of initial exposure to asbestos and ends with the onset of symptoms and diagnosis. From the time of exposure, asbestos fibers are readily inhaled into the lungs and can immediately injure the cells by causing inflammation and scarring. The disease process for a person who develops asbestosis begins within days of initial exposure to asbestos and continues for decades.... Even if an individual is no longer exposed to asbestos, asbestos fibers within the lung continue to split or divide over time, which is the main cause of the disease continuing and progressing. "Injury" continues as long as there is asbestos in the lung.[4]

The Second Circuit in *Stonewall* made similar findings regarding cancers, such as lung cancer and mesothelioma, caused by exposure to asbestos:

> Specifically, upon exposure to a carcinogenic substance, a cell "mutates," after which the cell containing that mutation replicates itself until millions of cells exist with the same mutation. One of those mutated cells may then undergo a second mutation, and so on until enough mutations have taken place to result in a cell that scientists call a "cancer cell." Asbestos can contribute to the process in four ways: it can (1) cause the mutation directly, (2) increase the likelihood that another mutation will occur, (3) introduce other carcinogenic substances into the cells, and (4) cause the release of other substances capable of causing certain mutations that asbestos may not be able to effect on its own.... In short, the medical evidence regarding the carcinogenic mechanisms of asbestos sufficiently establishes an insidious disease process involving billions of cellular mutations that constitute injuries. The jury could reasonably have concluded that these mutations occurred in a continuous sequence from initial exposure to the manifestation of the clinical diseases known as lung cancer and mesothelioma.[5]

The New York Court of Appeals declined to review *Keasbey*.[6] Accordingly, this Court is bound by *Stonewall* on trigger.[7] For both cancer and non-cancer diseases caused by exposure to asbestos, an "injury-in-fact" is deemed to take place at any time from exposure to asbestos through disease in residence to manifestation of the injury, inclusively.[8]

---

[4] *Stonewall*, 73 F.3d at 1198.
[5] *Id.* at 1198-99.
[6] See *Keasbey Co. v. Employers Ins. of Co. of Wausau*, 13 N.Y.3d 710 (2009).
[7] See *Dantuono v. Davis Vision, Inc.*, No. 07-CV-2234, 2009 U.S. Dist. LEXIS 122119, at *39 n.5 (S.D.N.Y. Dec. 29, 2009) (noting District Court is bound by Second Circuit's interpretation of New York law, not that of intermediate state appellate court).
[8] *Stonewall*, 73 F.3d at 1197-1200.

B.  *Keasbey* Involved A Direct Action By Underlying Asbestos Claimants Against An Insolvent Insulation Contractor's Insurer In Which The Claimants Sought "Operations" Coverage As Opposed To The Products Coverage At Issue In This Action.

The *Keasbey* litigation involved asbestos-related claims against the policyholder, Robert A. Keasbey Co. ("Keasbey"), a manufacturer and installer of products containing asbestos that ceased doing business in 1995 and dissolved in 2001. Keasbey was one of many defendants in the "Powerhouse Cases," a series of consolidated asbestos-related cases in the 1990s in which claimants alleged "a strict products liability and negligent 'failure to warn' theory emphasizing Keasbey's role as a manufacturer and distributor of asbestos products."[9] Until Keasbey's dissolution in 2001 "the insured, the insurers, primary and excess carriers, and the claimants all treated Keasbey's claims as strict products liability claims based on the inherently dangerous nature of Keasbey's asbestos products."[10] At the time of dissolution, Keasbey's products liability coverage had been exhausted by payments to asbestos claimants.

Then, in May 2001, counsel for approximately 20,000 claimants informed Keasbey and its insurers, Continental, they "would be pursuing a new theory of liability (non-products or 'operations' coverage), which was not subject to aggregate limits, and thus opened up Keasbey and its insurers to 'perpetual coverage.'"[11] **Prior to switching theories, claimants had already recovered hundreds of millions of dollars from CNA for the exact liabilities that Fulton faces here under the same types of policies under which Fulton is seeking coverage here.** The claimants were primarily tradesmen and utility workers who, although not employed by Keasbey, were present at various locations during Keasbey's installation of asbestos-containing products.

After losing in the trial court, Continental asserted on appeal that: (i) the operations coverage did not apply to claimants' suits because there was no evidence that bodily injury was sustained

---

[9] 871 N.Y.S.2d at 51.
[10] *Id.* at 52.
[11] *Id.* at 50.

3

while installation operations were ongoing or before the completion of any of the projects; (ii) exposure/inhalation did not trigger the applicable operations coverage; and (iii) Continental should not have the burden of proof. The Appellate Division found for Continental, stating it had "demonstrated that there exists no probable basis, factual or legal, for liability **outside of the products/completed operations provisions**."[12] The court held "claimants did not produce any evidence whatsoever in support of the new theory of liability; namely, that injuries arose before contracting operations by Keasbey were completed."[13]

The Appellate Division found that, to recover under the operations coverage, any alleged injury must have happened before the operations were completed. Thus, because "asbestos-related diseases require periods of long, intensive exposure rather than a single period of inhalation[,] in an '**operations coverage**' case, establishing the when and the how of the injury is especially crucial since injury must be shown to arise before the completion of an operation."[14]

The court observed the threshold fiber dose for asbestosis is typically not reached for bystanders for at least several years – longer than any Keasbey contracting job took to complete. Thus, the court found the claimants offered "no evidence whatsoever that any of them sustained an injury-in-fact in any one of the policy periods **arising out of 'ongoing operations**.'"[15]

Further – and critical to recovery under the *non-products/operations coverage* at issue in *Keasbey* – claimants also would have to establish they sustained injury before a contracting operation was completed. To meet that burden, a claimant would have to show either (i) contemporaneous injury or injury-in-fact stemming from an ongoing operation in the same policy year or (ii) injury-in-fact arising in the policy year but as a result of exposure during a prior ongoing operation. The court held that in the latter case "a claimant would have to show that **he was exposed only during that**

---

[12] *Id.* at 54. (emphasis added).
[13] *Id.*
[14] *Id.* at 60 (emphasis added).
[15] *Id.* at 63 (emphasis added).

4

**operation and that he was never exposed to asbestos after a Keasbey project was completed**....
[T]he claimant would be obligated to prove a negative, that is, he was never exposed to asbestos after Keasbey completed its installation obligations."[16]

Importantly, the Appellate Division distinguished operations coverage and products liability coverage, noting that

> **recovery under products liability claims is not dependent, as it is here, on the timing of the actual injury nor the particular stage of installation projects at which actual injury may have taken place.** The claimants are making an impermissible leap if they believe they can go forward and prove injury during operations simply by a conclusory assertion: claimant was exposed, claimant developed full-blown asbestos-related injury decades later, ergo, injury was sustained at the time of exposure."[17]

In addition to *Keasbey* not being binding on this Court,[18] it is also distinguishable because it dealt with a direct claim by allegedly injured parties seeking to "reopen" Continental's exhausted policies by tapping the operations coverage. The court's outrage at the greed of plaintiffs' counsel, and counsel's transparent switch to a new theory **after having already recovered hundreds of millions of dollars and exhausting products liability limits**, was palpable. Moreover, the Appellate Division's findings on trigger were arguably only *dicta*, because the court first determined that the plaintiffs' claim should be barred by the equitable doctrine of laches because of their inordinate delay in pursuing their new theory.[19] Accordingly, any reliance on the *Keasbey* decision in this case is misplaced and must be rejected.

---

[16] *Id.* (emphasis added).
[17] *Id.* at 64.
[18] *Dantuono*, 2009 U.S. Dist. LEXIS, at *39 n.5.
[19] *Keasbey*, 871 N.Y.S.2d at 58.

## **CONCLUSION**

For all the foregoing reasons, Fulton respectfully requests that the Court reject any reliance on the *Keasbey* decision in this case as misplaced.

By:    */s/ Brian J. Osias*
Gita F. Rothschild (Bar Roll # 514138)
Brian J. Osias (Bar Roll # 514139)
McCARTER & ENGLISH, LLP
245 Park Avenue
27th Floor
New York, NY 10167
Phone: 212.609.6800
Fax: 212.609.6921
Attorneys for Plaintiff
Fulton Boiler Works, Inc.

Dated: February 7, 2011