UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FULTON BOILER WORKS, INC.,<br>　　　　Plaintiff,<br>　　　-against-<br>AMERICAN MOTORISTS INSURANCE COMPANY; AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY; ONEBEACON INSURANCE COMPANY, as successor to Commercial Union Insurance Company, EMPLOYERS INSURANCE COMPANY OF WAUSAU; TRAVELERS CASUALTY AND SURETY COMPANY; and NATIONWIDE MUTUAL INSURANCE COMPANY,<br>　　　　Defendants. | Civil Action No. 06-CV-1117 (GTS/DEP) |
| AMERICAN MOTORISTS INSURANCE COMPANY; AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, and ONEBEACON INSURANCE COMPANY, as successor to Commercial Union Insurance Company,<br>　　　　Third-Party Plaintiffs,<br>　　　- against -<br>EMPLOYERS INSURANCE COMPANY OF WAUSAU; TRAVELERS; and NATIONWIDE MUTUAL INSURANCE COMPANY,<br>　　　　Third-Party Defendants. | |

**SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF FULTON BOILER WORKS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO THE CROSS-MOTIONS FOR SUMMARY JUDGMENT OF CERTAIN INSURANCE COMPANIES**

　　　　　　　　　　　　　　　　　　　　**McCARTER & ENGLISH, LLP**
　　　　　　　　　　　　　　　　　　　　245 Park Avenue, 27th Floor
　　　　　　　　　　　　　　　　　　　　New York, NY 10167
　　　　　　　　　　　　　　　　　　　　Phone: 212.609.6800
　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　Fulton Boiler Works, Inc.

ME1 11098428v.1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ....................................................................................................................1

A. Travelers' Interpretation Of *Keasbey* Contradicts *Stonewall* And, Thus, Must Be Rejected By This Court. ............................................................................1

B. *Keasbey* Involved A Direct Action By Underlying Asbestos Claimants Against An Insolvent Insulation Contractor's Insurer In Which The Claimants Sought "Operations" Coverage As Opposed To The Products Coverage At Issue In This Action. ...........................................................................................3

CONCLUSION ...............................................................................................................6

ME1 11098428v.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Continental Casualty Co. v. Employers Insurance Co. of Wausau,*
  871 N.Y.S.2d 48 (1st Dept. 2008) .................................................................................1, 3, 4, 5

*Dantuono v. Davis Vision, Inc.,*
  No. 07-CV-2234, 2009 U.S. Dist. LEXIS 122119 (S.D.N.Y. Dec. 29, 2009) ......................2, 5

*Keasbey Co. v. Employers Ins. of Co. of Wausau,*
  13 N.Y.3d 710 (2009) ....................................................................................................1, 2, 3, 5

*Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.,*
  73 F.3d 1178 (2d Cir. 1995), *modified on denial of reh'g*, 85 F.3d 49 (2d Cir. 1996) ..........1, 2, 3

*Viking Pump, Inc. v. Century Indem. Co.,*
  2 A.3d 76 (Del. Ch. Oct. 14, 2009) .............................................................................................1

## PRELIMINARY STATEMENT

During the pendency of these motions, Defendant Travelers Casualty and Surety Company ("Travelers") has obstructed defense counsel's strategy for resolving underlying asbestos bodily injury claims against Fulton Boiler Works, Inc. ("Fulton") by asserting reliance on the patently inapplicable Appellate Division opinion in *Continental Casualty Co. v. Employers Insurance Co. of Wausau*, 871 N.Y.S.2d 48 (1st Dept. 2008) ("*Keasbey*").[1] Travelers has told Fulton that it will not pay its share of any asbestos settlement or verdict unless Fulton proves that the individual claimant actually sustained asbestos-related bodily injury during a Travelers policy period.[2]

Travelers' position is entirely baseless for the following reasons that are well known to Travelers:

1.  It contradicts binding Second Circuit law specifically holding that, with respect to asbestos-related diseases, a claimant's injury occurs from the date of first exposure through the manifestation of disease. *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1203-04 (2d Cir. 1995), *modified on denial of reh'g*, 85 F.3d 49 (2d Cir. 1996); and

2.  *Keasbey* involved operations coverage, not the products liability coverage at issue in this case. Accordingly, as the *Keasbey* court itself noted, the decision is inapplicable.

## ARGUMENT

A. **Travelers' Interpretation Of *Keasbey* Contradicts *Stonewall* And, Thus, Must Be Rejected By This Court.**

As the Second Circuit held in *Stonewall*, New York courts apply an injury-in-fact trigger to bodily injury claims arising from exposure to asbestos.[3] For non-cancer diseases caused by exposure to asbestos, such as asbestosis and pleural plaques, the Second Circuit in *Stonewall* found that injury to the lungs happens from the time of exposure, during a latency period when the disease is not diagnosable, through the time of disease manifestation:

---

[1] *E.g.*, E-mail dated 1/13/11, from Brian Cucuzzo to Suzanne Halbardier, *et al.*, at 1, attached hereto as Ex. "A."
[2] *E.g.*, Letter dated 12/15/10, from Cocuzzo to Simmons, at 1, attached hereto as Ex. "B."
[3] 73 F.3d at 1194-97; *see also Viking Pump, Inc. v. Century Indem. Co.*, 2 A.3d 76 (Del. Ch. Oct. 14, 2009) (applying New York law).

> [T]here is a period of time prior to the point at which asbestosis and pleural plaques are clinically diagnosable when the condition is evolving cumulatively or incrementally. This period when the asbestosis or pleural plaques develop undetected is the latency period, which is normally 15 years and may be as long as 40 years. The latency period begins at the time of initial exposure to asbestos and ends with the onset of symptoms and diagnosis. From the time of exposure, asbestos fibers are readily inhaled into the lungs and can immediately injure the cells by causing inflammation and scarring. The disease process for a person who develops asbestosis begins within days of initial exposure to asbestos and continues for decades.... Even if an individual is no longer exposed to asbestos, asbestos fibers within the lung continue to split or divide over time, which is the main cause of the disease continuing and progressing. "Injury" continues as long as there is asbestos in the lung.[4]

The Second Circuit in *Stonewall* made similar findings regarding cancers, such as lung cancer and mesothelioma, caused by exposure to asbestos:

> Specifically, upon exposure to a carcinogenic substance, a cell "mutates," after which the cell containing that mutation replicates itself until millions of cells exist with the same mutation. One of those mutated cells may then undergo a second mutation, and so on until enough mutations have taken place to result in a cell that scientists call a "cancer cell." Asbestos can contribute to the process in four ways: it can (1) cause the mutation directly, (2) increase the likelihood that another mutation will occur, (3) introduce other carcinogenic substances into the cells, and (4) cause the release of other substances capable of causing certain mutations that asbestos may not be able to effect on its own.... In short, the medical evidence regarding the carcinogenic mechanisms of asbestos sufficiently establishes an insidious disease process involving billions of cellular mutations that constitute injuries. The jury could reasonably have concluded that these mutations occurred in a continuous sequence from initial exposure to the manifestation of the clinical diseases known as lung cancer and mesothelioma.[5]

The New York Court of Appeals declined to review *Keasbey*.[6] Accordingly, this Court is bound by *Stonewall* on trigger.[7] For both cancer and non-cancer diseases caused by exposure to asbestos, an "injury-in-fact" is deemed to take place at any time from exposure to asbestos through disease in residence to manifestation of the injury, inclusively.[8]

---

[4] *Stonewall*, 73 F.3d at 1198.
[5] *Id.* at 1198-99.
[6] *See Keasbey Co. v. Employers Ins. of Co. of Wausau*, 13 N.Y.3d 710 (2009).
[7] *See Dantuono v. Davis Vision, Inc.*, No. 07-CV-2234, 2009 U.S. Dist. LEXIS 122119, at *39 n.5 (S.D.N.Y. Dec. 29, 2009) (noting District Court is bound by Second Circuit's interpretation of New York law, not that of intermediate state appellate court).
[8] *Stonewall*, 73 F.3d at 1197-1200.

2

B.  *Keasbey* Involved A Direct Action By Underlying Asbestos Claimants Against An Insolvent Insulation Contractor's Insurer In Which The Claimants Sought "Operations" Coverage As Opposed To The Products Coverage At Issue In This Action.

The *Keasbey* litigation involved asbestos-related claims against the policyholder, Robert A. Keasbey Co. ("Keasbey"), a manufacturer and installer of products containing asbestos that ceased doing business in 1995 and dissolved in 2001. Keasbey was one of many defendants in the "Powerhouse Cases," a series of consolidated asbestos-related cases in the 1990s in which claimants alleged "a strict products liability and negligent 'failure to warn' theory emphasizing Keasbey's role as a manufacturer and distributor of asbestos products."[9] Until Keasbey's dissolution in 2001 "the insured, the insurers, primary and excess carriers, and the claimants all treated Keasbey's claims as strict products liability claims based on the inherently dangerous nature of Keasbey's asbestos products."[10] At the time of dissolution, Keasbey's products liability coverage had been exhausted by payments to asbestos claimants.

Then, in May 2001, counsel for approximately 20,000 claimants informed Keasbey and its insurers, Continental, they "would be pursuing a new theory of liability (non-products or 'operations' coverage), which was not subject to aggregate limits, and thus opened up Keasbey and its insurers to 'perpetual coverage.'"[11] **<u>Prior to switching theories, claimants had already recovered hundreds of millions of dollars from CNA for the exact liabilities that Fulton faces here under the same types of policies under which Fulton is seeking coverage here.</u>** The claimants were primarily tradesmen and utility workers who, although not employed by Keasbey, were present at various locations during Keasbey's installation of asbestos-containing products.

After losing in the trial court, Continental asserted on appeal that: (i) the operations coverage did not apply to claimants' suits because there was no evidence that bodily injury was sustained

---

[9] 871 N.Y.S.2d at 51.
[10] *Id.* at 52.
[11] *Id.* at 50.

3

while installation operations were ongoing or before the completion of any of the projects; (ii) exposure/inhalation did not trigger the applicable operations coverage; and (iii) Continental should not have the burden of proof. The Appellate Division found for Continental, stating it had "demonstrated that there exists no probable basis, factual or legal, for liability **outside of the products/completed operations provisions**."[12] The court held "claimants did not produce any evidence whatsoever in support of the new theory of liability; namely, that injuries arose before contracting operations by Keasbey were completed."[13]

The Appellate Division found that, to recover under the operations coverage, any alleged injury must have happened before the operations were completed. Thus, because "asbestos-related diseases require periods of long, intensive exposure rather than a single period of inhalation[,] in an '**operations coverage**' case, establishing the when and the how of the injury is especially crucial since injury must be shown to arise before the completion of an operation."[14]

The court observed the threshold fiber dose for asbestosis is typically not reached for bystanders for at least several years – longer than any Keasbey contracting job took to complete. Thus, the court found the claimants offered "no evidence whatsoever that any of them sustained an injury-in-fact in any one of the policy periods **arising out of 'ongoing operations**.'"[15]

Further – and critical to recovery under the *non-products/operations coverage* at issue in *Keasbey* – claimants also would have to establish they sustained injury before a contracting operation was completed. To meet that burden, a claimant would have to show either (i) contemporaneous injury or injury-in-fact stemming from an ongoing operation in the same policy year or (ii) injury-in-fact arising in the policy year but as a result of exposure during a prior ongoing operation. The court held that in the latter case "a claimant would have to show that **he was exposed only during that**

---

[12] *Id.* at 54. (emphasis added).
[13] *Id.*
[14] *Id.* at 60 (emphasis added).
[15] *Id.* at 63 (emphasis added).

4

**operation and that he was never exposed to asbestos after a Keasbey project was completed**....
[T]he claimant would be obligated to prove a negative, that is, he was never exposed to asbestos after Keasbey completed its installation obligations."[16]

Importantly, the Appellate Division distinguished operations coverage and products liability coverage, noting that

> **recovery under products liability claims is not dependent, as it is here, on the timing of the actual injury nor the particular stage of installation projects at which actual injury may have taken place.** The claimants are making an impermissible leap if they believe they can go forward and prove injury during operations simply by a conclusory assertion: claimant was exposed, claimant developed full-blown asbestos-related injury decades later, ergo, injury was sustained at the time of exposure."[17]

In addition to *Keasbey* not being binding on this Court,[18] it is also distinguishable because it dealt with a direct claim by allegedly injured parties seeking to "reopen" Continental's exhausted policies by tapping the operations coverage. The court's outrage at the greed of plaintiffs' counsel, and counsel's transparent switch to a new theory **after having already recovered hundreds of millions of dollars and exhausting products liability limits**, was palpable. Moreover, the Appellate Division's findings on trigger were arguably only *dicta*, because the court first determined that the plaintiffs' claim should be barred by the equitable doctrine of laches because of their inordinate delay in pursuing their new theory.[19] Accordingly, any reliance on the *Keasbey* decision in this case is misplaced and must be rejected.

---

[16] *Id.* (emphasis added).
[17] *Id.* at 64.
[18] *Dantuono*, 2009 U.S. Dist. LEXIS, at *39 n.5.
[19] *Keasbey*, 871 N.Y.S.2d at 58.

ME1 11098428v.1

## CONCLUSION

For all the foregoing reasons, Fulton respectfully requests that the Court reject any reliance on the *Keasbey* decision in this case as misplaced.

By:     */s/ Brian J. Osias*
Gita F. Rothschild (Bar Roll # 514138)
Brian J. Osias (Bar Roll # 514139)
McCARTER & ENGLISH, LLP
245 Park Avenue
27th Floor
New York, NY 10167
Phone: 212.609.6800
Fax: 212.609.6921
Attorneys for Plaintiff
Fulton Boiler Works, Inc.

Dated: February 9, 2011