UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FULTON BOILER WORKS, INC.,

                                        Plaintiff,

        -v-                                         5:06-CV-1117

AMERICAN MOTORISTS INSURANCE
COMPANY; AMERICAN MANUFACTURERS
MUTUAL INSURANCE COMPANY;
ONEBEACON INSURANCE COMPANY, as
successor to Commercial Union Insurance
Company; EMPLOYERS INSURANCE
COMPANY OF WAUSAU; TRAVELERS
CASUALTY & SURETY COMPANY; and
NATIONWIDE MUTUAL INSURANCE
COMPANY,

                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

MCCARTER & ENGLISH LLP                  BRIAN J. OSIAS, ESQ.
Attorneys for Plaintiff                 GITA F. ROTHSCHILD, ESQ.
100 Mulberry Street                     ANNE E. MATTHEWS, ESQ.
4 Gateway Center
Newark, NJ  07102
265 Franklin Street
14th Floor
Boston, MA  02110

CHARLSTON, REVICH & WOLLITZ LLP         JAMES B. GREEN, ESQ.
Attorneys for Defendants American Motorists
    Insurance Company and American
    Manufacturers Mutual Insurance Company
1925 Century Park East
Suite 1250
Los Angeles, CA  90067

FIBERTECH NETWORKS LLC                  JAMES A. HOARE, ESQ.
Attorneys for Defendants American Motorists
    Insurance Company and American

Manufacturers Mutual Insurance Company
140 Allen Creek Road
Rochester, NY  14618

OFFICE OF RICHARD P. PLOCHOCKI          RICHARD P. PLOCHOCKI, ESQ.
Attorneys for Defendants American Motorists
    Insurance Company and American
    Manufacturers Mutual Insurance Company
One Lincoln Center
Suite 1010
Syracuse, NY  13202

CARROLL, MCNULTY & KULL LLC             KRISTIN V. GALLAGHER, ESQ.
Attorneys for Defendant OneBeacon
    Insurance Company
570 Lexington Avenue
8th Floor
New York, NY  10022

LAW OFFICES OF EPSTEIN & HARTFORD       JENNIFER V. SCHIFFMACHER, ESQ.
Attorneys for Defendants Employers Insurance   SHEILA M. FINN SCHWEDES, ESQ.
    Company of Wausau and Nationwide
    Mutual Insurance Company
2150 Wehrle Drive
Suite 500B
Williamsville, NY  14221
110 Elwood Davis Road
North Syracuse, NY  13212

GRAHAM, CURTIN P.A.                      ROBERT W. MAURIELLO, JR., ESQ.
Attorneys for Defendant Travelers Casualty     STEPHEN V. GIMIGLIANO, ESQ.
    & Surety Company
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ  07962


DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

On April 25, 2006, plaintiff Fulton Boiler Works, Inc. ("plaintiff" or "Fulton") filed this action in New York State Supreme Court, Oswego County, against defendants American Motorists Insurance Company, American Manufacturers Mutual Insurance Company (collectively "AMICO"),[1] and OneBeacon Insurance Company ("OneBeacon").  Dkt. No. 1, Ex. A.  OneBeacon removed this action to federal court on September 18, 2006.  Dkt. No. 1.  On December 19, 2008—after the parties brought numerous counterclaims, cross-claims, and third-party complaints[2]—Fulton filed an amended complaint against defendants AMICO, OneBeacon, Employers Insurance Company of Wausau ("Wausau"), Travelers Casualty & Surety Company ("Travelers"), and Nationwide Mutual Insurance Company ("Nationwide") (collectively "defendants").  Dkt. No. 93.

Thereafter, OneBeacon filed a counterclaim against Fulton and cross-claims against AMICO, Wausau, Travelers, and Nationwide.  Dkt. No. 95.  AMICO then brought a counterclaim against Fulton and cross-claims against OneBeacon, Wausau, Travelers, and Nationwide.  Dkt. No. 98.  Travelers filed a counterclaim against Fulton as well as cross-claims against AMICO and OneBeacon.  Dkt. No. 101.

Through its amended complaint, plaintiff asserts equitable estoppel/waiver against defendants and seeks a judgment declaring that defendants are obligated to fully defend and

---

[1]  Throughout the litigation, the parties have referred to AMICO as "Kemper."  However, this trade name has been sold and is no longer affiliated with AMICO.  AMICO's Reply Mem. of Law, Dkt. No. 203, 1 n.1.

[2]  The third-party complaints filed by AMICO and OneBeacon on November 9, 2006, and July 23, 2007, respectively (Dkt. Nos. 8, 33) will be dismissed as moot in a separate order.

indemnify Fulton in connection with thousands of civil lawsuits filed against it (the "Asbestos Claims").  Plaintiff also seeks damages for defendants' alleged breach of contract as well as costs and fees related to this action.  Generally, defendants maintain that Fulton is obligated to pay a pro rata share of the indemnity costs in connection with the Asbestos Claims.

On March 25, 2010, Fulton's first motion for partial summary judgment was granted in part and denied in part.  Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co., 2010 WL 1257943 (N.D.N.Y. Mar. 25, 2010) (Suddaby, J.).[3]  Specifically, plaintiff's request that defendants be required to pay the full defense costs related to the Asbestos Claims was granted, but the request that defendants be required to pay fees and costs associated with this action was denied.  Id. at *8.  Defendants' cross-motions for summary judgment were all denied.  Id. at *9.

Currently pending are:  (1) Travelers' motion for summary judgment declaring that Fulton is obligated to pay a pro rata share of indemnity costs related to years it was uninsured (Dkt. No. 170); (2) AMICO's motion for partial summary judgment ordering Travelers to contribute a pro rata share of defense and indemnity costs related to claims for which it received a complaint, "written tender," and/or invoices from defense counsel (Dkt. No. 172); (3) Fulton's motion for partial summary judgment declaring that AMICO and OneBeacon must continue to fully indemnify Fulton and that Fulton cannot be allocated any share of indemnity costs (Dkt. No. 174); (4) OneBeacon's motion for partial summary judgment declaring that Fulton is obligated to pay a pro rata share of the indemnity costs for years it was uninsured (Dkt. No. 175); (5) OneBeacon's motion for partial summary judgment

---

[3] On November 19, 2010, this action was reassigned after Judge Suddaby recused himself due to a potential conflict of interest.  Dkt. No. 209.

declaring that Travelers received proper notice of all underlying Asbestos Claims and must contribute a pro rata share of defense and indemnity costs based on its four years of coverage (Dkt. No. 178); (6) Wausau and Nationwide's cross-motion for partial summary judgment ordering Fulton to contribute to the indemnity costs (Dkt. No. 189)[4]; and (7) Travelers' cross-motion for partial summary judgment declaring that it cannot be allocated defense and/or indemnity costs related to claims for which it was not provided proper notice (Dkt. No. 193).

OneBeacon, AMICO, and Fulton have responded to the pending motions. Dkt. Nos. 187, 188, 190, 191, 201. OneBeacon, AMICO, Travelers, and Fulton filed reply briefs. Dkt. Nos. 202, 203, 204, 206. Fulton and Travelers filed supplemental memoranda. Dkt. Nos. 217, 218, 222. These fully briefed motions were considered on submit.

## II. FACTUAL BACKGROUND

From 1949 until the mid-1970s, Fulton manufactured and sold boilers that contained asbestos parts. While the parties dispute whether Fulton purchased insurance prior to 1976,[5] it is generally agreed that a combination of comprehensive general liability policies issued by AMICO, OneBeacon, Travelers, and Wausau covered Fulton for asbestos exposure risks from 1976 until 1993. Specifically, Fulton was covered by Travelers from October 1976 through October 1980, OneBeacon from October 1980 through October 1983,

---

[4] Wausau and Nationwide are represented by the same counsel and filed joint motion paperwork. They will therefore be considered together for purposes of these motions and referred to as "Wausau."

[5] Fulton cannot locate copies of liability policies it allegedly purchased prior to 1976, but maintains that it did indeed secure such coverage. Defendants assert that Fulton's inability to locate the documents evidences a lack of any insurance coverage prior to 1976.

Wausau from October 1983 through October 1984, and AMICO from October 1984 through September 1993—when an asbestos liability exclusion was added to the policy.

Beginning in the early 1990s, plaintiff has been named in thousands of civil lawsuits alleging exposure to asbestos from its boilers.[6]  In 1991, Fulton retained its own counsel to monitor the incoming claims.  Fulton also advised OneBeacon and AMICO, the only insurers known to Fulton at the time, of the pending litigation and requested defense.  OneBeacon and AMICO agreed to defend Fulton.  OneBeacon and AMICO assert, and plaintiff denies, that Fulton was advised in 1991 that it would be expected to pay its share of any costs related to claims arising from years in which Fulton was uninsured.

Fulton alleges that from 1992 to 2005, OneBeacon and AMICO shared all defense and indemnity costs related to the Asbestos Claims and did not ask plaintiff to contribute anything during that time period.  Fulton further asserts that OneBeacon and AMICO exercised complete control over the defense strategy, ignored Fulton's "no-settle" policy, and settled claims that did not even involve Fulton boilers.  OneBeacon and AMICO argue that Fulton agreed to pay one-third of the litigation costs in January 1995; was actively represented by counsel from 1991 until 2001; was repeatedly asked to contribute to any claims arising from uninsured periods; and was consulted prior to the resolution of the cases. None of the over 14,000 Asbestos Claims have gone to trial and at least fourteen (14) have settled to date.

---

[6]  Plaintiff maintains that the potential asbestos exposure from its boilers is minimal due to their unique design.  As a result, plaintiff stresses the need to vigorously defend these claims and faults OneBeacon and AMICO's historic handling of the cases, which Fulton argues has not been aggressive enough to exonerate Fulton or deter future claims.

In 1998, after the number of Asbestos Claims increased sharply, OneBeacon and AMICO entered into a cost-sharing agreement under which AMICO paid 75% of the defense costs and OneBeacon paid the remaining 25%.  This agreement did not require Fulton to contribute to the litigation costs.  In August 2001 AMICO circulated a proposed cost-sharing agreement that reflected the 75%–25% split between AMICO and OneBeacon, but allowed for modification in the event new insurers were identified.  Importantly, the proposal only applied to defense costs and specifically noted that "[n]othing contained herein has, or shall be construed to have, any application to the indemnification for any Asbestos Bodily Injury Claims or any other kind of claim that has been or may be asserted against Fulton."  Osias Certification, Ex. 17, Dkt. No. 174-5, ¶ 1(A) ("2001 Proposal").[7]

Travelers' and Wausau's policies were discovered in October 2001 and December 2005, respectively.  Thereafter, defendants agreed to what they describe as an "interim" modified cost-sharing agreement that divided the defense costs among AMICO (64.5%), OneBeacon (21.5%), Travelers (7%), and Wausau (7%).  Again, there was no provision calling for Fulton to contribute, and the agreement related only to defense costs.  In December 2005 Fulton was asked to contribute to the indemnity costs of the Asbestos Claims.  Fulton has refused to pay such costs on a regular basis but admittedly contributed $18,200 toward a settlement in December 2005.

---

[7] Interestingly, the unexecuted 2001 Proposal also contains the following provision:  "The Agreement . . . shall not be offered or used in any court or dispute resolution proceeding to create, prove, or interpret any obligations of the Parties under any policy of insurance or as evidence of any rights or duties or breaches of any rights or duties owed . . . by either Party."  Id. at ¶ 7(A).  Yet the parties attempt to do just that.

## III.  **DISCUSSION**

Jurisdiction in this case is based on the diversity of the parties, who agree that New York law is controlling.  See Fulton Boiler Works, Inc., 2010 WL 1257943, at *5 (holding that New York law applies to this matter).  The issues presented in the parties' motions are:  (1) how to properly allocate the indemnity costs among the liable parties; (2) whether Fulton is obligated to pay a share of the indemnity costs based on its alleged lack of insurance from 1949 to October 1976; (3) whether equitable estoppel bars AMICO and OneBeacon from denying their obligation to fully indemnify Fulton; (4) whether Fulton can be allocated a share of indemnity costs for the years after 1993; and (5) whether Travelers has an obligation to contribute to the defense and indemnity costs related to underlying Asbestos Claims.[8]

It is noted at the outset that an insurer's obligation to indemnify is not as broad as its obligation to defend.  Bovis v. Crab Meadow Enters., Ltd., 67 A.D.3d 846, 848 (N.Y. App. Div. 2d Dep't 2009).  Consequently, "[a]n insurer may be contractually bound to defend even though it may not be ultimately bound to indemnify, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage."  N.Y. Funeral Chapels, Inc. v. Globe Indem. Co., 33 F. Supp. 2d 294, 298 (S.D.N.Y. 1999) (internal quotation marks and alteration omitted).  Therefore, the previous order obligating defendants to continue to fully defend Fulton has no bearing on defendants' obligations to indemnify Fulton.

---

[8]  Importantly, the motions do not seek an order specific to any particular underlying Asbestos Claim. Instead, the parties seek general declarations regarding the five issues listed above, which will direct their interaction going forward.  Any subsequent disputes pertaining to specific Asbestos Claims that cannot be remedied among the parties may require separate litigation in the future.

## A. <u>Motion for Summary Judgment—Legal Standard</u>

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510; <u>see also</u> <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. <u>Id</u>. at 250 n.4, 106 S. Ct. at 2511 n.4. The failure to meet this burden warrants denial of the motion. <u>Id</u>. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. <u>Id</u>. at 250, 106 S. Ct. at 2511; Fed. R. Civ. P. 56(e).

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. <u>Jeffreys</u>, 426 F.3d at 553. Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); <u>see also</u>

Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Proper Allocation of Indemnity Costs

The parties cite substantially the same case law in their arguments regarding the proper approach to allocating indemnity costs.  Further, they agree that a pro rata allocation of indemnity costs is consistent with the comprehensive general liability policies involved.  The parties instead dispute which parties should be included in such an allocation and to what extent.  The relevant law regarding allocation is outlined here for the sake of clarity.

Initially, the scope of the underlying Asbestos Claims must be defined in order to determine which policies, if any, are implicated.  When determining if numerous claims are to be treated as multiple individual occurrences or grouped together as a single broad occurrence, courts are to consider "whether there is a close temporal and spatial relationship between the incidents giving rise to injury or loss, and whether the incidents can be viewed as part of the same causal continuum, without intervening agents or factors."  Appalachian Ins. Co. v. Gen. Electric Co., 8 N.Y.3d 162, 171–72 (N.Y. 2007).  In the Appalachian case, for example, the court held that the policy language was consistent with treating numerous asbestos exposure claims as multiple independent occurrences (separate exposures and injuries) as opposed to a single occurrence (plaintiff's prolonged failure to warn of asbestos).  Id. at 173–74.  Similarly, the Asbestos Claims here must be considered as multiple independent occurrences rather than grouped into a single broad occurrence.  Indeed, the claims arise from different time periods and allege exposure at different locations from different boilers.

Next, the time period of a particular claimed injury must be defined.  Generally, a comprehensive general liability policy is "triggered by an injury-in-fact during the policy period."  Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp., 73 F.3d 1178, 1194 (2d Cir. 1995), modified on denial of reh'g, 85 F.3d 49 (2d Cir. 1996).  In other words, "where the evidence establishes a progressive bodily disease [e.g. asbestosis, pleural plaques, or cancer], with injury-in-fact recurring throughout the disease process, all policies in effect at any time during that process are triggered."  Id. at 1197.  Indeed, "New York recognizes that whenever the facts show injury during a relevant policy period, the policy applies, even though injury was also shown to have occurred in an earlier period covered by a prior policy."  Id. at 1196.

Once the time period of an individual claim is isolated, the next step is to assign liability for indemnity costs.  Because an injury-in-fact may span several years, multiple policies issued by various insurers may be triggered.  In Consolidated Edison Co. of New York v. Allstate Insurance Co., the Court of Appeals of New York upheld a lower court's pro rata allocation of indemnity among successive insurance carriers for claims that alleged continuous exposure and injury spanning multiple policy periods.  98 N.Y.2d 208, 224 (N.Y. 2002).  Similarly, the Second Circuit has favored a pro rata allocation of indemnity over a joint and several approach.  See Olin Corp. v. Ins. Co. of N. Am., 221 F.3d 307, 323–24 (2d Cir. 2000).[9]  Moreover, the Second Circuit has explicitly endorsed a "proration-to-the-insured approach" by which a pro rata share of liability is assigned to the insured for any uninsured or

---

[9]  By way of example of this "time-on-the-risk" method, the Second Circuit has suggested that the share of indemnification be determined by multiplying the settlement by "a fraction that has as its denominator the number of years in which both injury-in-fact was occurring and insurance was available, and as its numerator the number of years within that period when the insurance was in effect."  Stonewall Ins. Co., 73 F.3d at 1204.

insufficiently insured portion of time during a particular claimant's injury.  Stonewall Ins. Co.,
73 F.3d at 1202–03.

In sum, each Asbestos Claim must be considered as a single occurrence.  Further,
the liability for a particular claim should be prorated according to the time each defendant
provided coverage during the overall time period the injury-in-fact was occurring.  Finally,
Fulton must be assigned a pro rata share of indemnity costs for any uninsured or
insufficiently insured portion of a particular claimant's injury.

### C.  Pre-1976 Allocation of Indemnity Costs to Fulton

Plaintiff maintains that it cannot be allocated a share of indemnity costs for the years
prior to 1976 because it never intentionally elected to forgo insurance coverage for asbestos
risks.  Defendants argue that Fulton was uninsured, self-insured, or insufficiently insured
prior to 1976 and is therefore liable for a pro rata share of the indemnity costs for the time
period beginning at Fulton's inception in 1949 and ending in October 1976 when Travelers
issued a general liability coverage policy.

As noted above, a policyholder may be allocated a share of indemnity for any period
of time it assumed the risk and "elected not to purchase insurance or purchased insufficient
insurance."  Id. at 1203.  "Generally, it is for the insured to establish coverage."  Consol.
Edison Co., 98 N.Y.2d at 218.  To do so, "an insured may rely on secondary evidence (i.e.,
evidence other than the policy itself) to prove the existence and terms of an insurance policy"
if there has been a diligent but unsuccessful search for such policies.  Burt Rigid Box, Inc. v.
Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).  While Fulton asserts that

coverage must be proven by a mere preponderance of the evidence, the proper standard of proof appears to be by clear and convincing evidence.  See id. at 93.[10]

Although none of the parties can locate copies of general liability insurance policies providing coverage prior to October 1976, Fulton maintains that it did in fact purchase such coverage.  To support this assertion, Fulton points to records obtained from the New York State Workers Compensation Board, the deposition of Michael Simmons, and affidavits from Ronald Bramley Palm, Jr. and Ronald Bramley Palm, Sr.  The parties do not dispute whether a "diligent" search was conducted.  It is thus assumed that such a search was completed, and the secondary evidence will therefore be considered.

The records obtained from the Workers Compensation Board indicate that workers compensation claims were paid out to Fulton employees in various years prior to 1976.  These records show that Aetna, a predecessor of Travelers, provided workers compensation coverage to Fulton from 1960 to 1969.  See Palm, Sr. Aff., Ex. 1, Dkt. No. 191-4, 7–15.[11] These records also indicate that Commercial Union, a predecessor of OneBeacon, issued workers compensation coverage to Fulton in 1972, 1973, and 1975.  See id. at 18–19.

Plaintiff argues that these workers compensation records establish that it had also purchased general liability insurance coverage from Travelers for 1960–1969 and OneBeacon for 1972, 1973, and 1975.  This conclusion is based on Fulton's assertion that it purchased all of its insurance coverage (liability, auto, property, and workers compensation)

---

[10]   Some courts have held that a preponderance of the evidence is the proper standard of proof to establish the existence of a lost insurance policy.  See Bianchi v. Florists Mut. Ins. Co., 660 F. Supp. 2d 434, 437 (E.D.N.Y. 2009) (collecting cases).  However, the issue of which standard applies is immaterial because, as explained below, Fulton cannot meet either standard.

[11]   The pagination corresponds to the page numbers as assigned on CM/ECF.  This convention will be used throughout the order for citations to exhibits.

from the same carrier. However, this conclusion is undercut by the workers compensation records relating to 1976–1979. The records show that Fulton had workers compensation coverage through Firemen's Insurance of New Jersey in 1976 and Standard Fire Insurance Company in 1977–1979. See id. at 5, 21–23. However, the parties agree that Travelers provided general liability insurance to Fulton from October 1976 through October 1980. This is counter to Fulton's alleged practice of purchasing all forms of insurance from the same insurer.[12] Therefore, the workers compensation records do not provide any indication as to which insurer, if any, provided general liability coverage to Fulton prior to October 1976.

Plaintiff's assertion that it had general liability coverage prior to October 1976 is thus supported only by the self-serving testimony of its current and former executives who maintain that it was always the custom, practice, and philosophy of the company to purchase proper insurance coverage. This is insufficient to establish, by clear and convincing evidence or by a preponderance of the evidence, the existence of coverage. See Bianchi, 660 F. Supp. 2d at 439–40 (plaintiff failed to establish, by a preponderance of the evidence, the existence of coverage where the only evidence was the assertion of the founders' son that his parents had purchased general liability coverage for the company). No reasonable jury could determine that Fulton had purchased general liability coverage prior to October 1976. Moreover, even if Fulton's assertion that it had purchased coverage prior to October 1976 were taken as true, it would be pure speculation to assign liability to a particular insurer for any year during that period.

---

[12] There is no indication that Firemen's Insurance of New Jersey and/or Standard Fire Insurance Company were predecessors of Travelers.

Accordingly, Fulton's motion for summary judgment barring defendants from allocating it a share of indemnity costs for claims alleging injury-in-fact before October 1976 will be denied.  Further, defendants' motions for summary judgment seeking to allocate a share of indemnity to Fulton for the time period spanning 1949 until October 1976 will be granted.

### D. <u>Equitable Estoppel</u>

Plaintiff next attempts to invoke equitable estoppel to prevent OneBeacon and AMICO from seeking any indemnification from Fulton.  Specifically, Fulton claims that defendants fully indemnified it for over a decade without disclaiming their obligation to do so, never requested contribution from Fulton, completely controlled the defense strategy and settlement negotiations, and caused Fulton to detrimentally rely on full indemnification. OneBeacon and AMICO argue that Fulton was advised as early as 1991 that it was expected to contribute to settlements, was repeatedly asked to contribute, contributed to at least one settlement, was involved in the defense and settlement negotiations, and neither suffered prejudice by nor reasonably relied upon the defense strategy and settlements.

Under New York law an insured may invoke the doctrine of equitable estoppel where the insurer, although under no obligation to do so, assumes the defense and indemnification of the insured without disclaiming coverage or reserving its rights, and the insured relies on such defense and indemnification to such a degree that it loses its "right to control its own defense."  <u>See</u> <u>Albert J. Schiff Assocs., Inc. v. Flack</u>, 51 N.Y.2d 692, 699 (N.Y. 1980).  This "requires a showing of prejudice to the insured."  <u>Burt Rigid Box, Inc.</u>, 302 F.3d at 95. However, an insurer is not required to disclaim coverage where no insurance was in effect in the first place.  <u>See</u> <u>Zappone v. Home Ins. Co.</u>, 55 N.Y.2d 131, 137–38 (N.Y. 1982) (noting that New York insurance law requiring timely disclaimer was not intended "to provide an

added source of indemnification which had never been contracted for and for which no premium had ever been paid"); Wausau Ins. Cos. v. Feldman, 213 A.D.2d 179, 180 (N.Y. App. Div. 1st Dep't 1995) (despite fact that insurer defended purported insured for nine years, equitable estoppel was inapplicable where the policy was not in effect at the time of the alleged injury).  Timely disclaimer is only necessary where the insurer seeks to deny coverage based on a policy exception.  See Worcester Ins. Co. v. Bettenhauser, 95 N.Y.2d 185, 189–90 (N.Y. 2000) (explaining that this distinction is intended "to avoid prejudice to an injured claimant who could be harmed by delay in learning the insurer's position").

OneBeacon and AMICO do not deny their obligation to indemnify Fulton for their pro rata share according to the years they provided general liability coverage.  Nor do these defendants seek to disclaim coverage based on a policy exclusion.  They therefore were under no obligation to provide a disclaimer to Fulton.  Moreover, although OneBeacon and AMICO continued to fully defend and indemnify Fulton, they repeatedly reserved their right to seek partial indemnification and advised plaintiff that it would ultimately be responsible for costs related to any uninsured years.  From the earliest stages of the underlying Asbestos Claims, Fulton was aware that defendants believed Fulton's alleged lack of insurance prior to October 1976 was relevant to the allocation issue.

In a September 19, 1990, letter to Fulton's Vice President, AMICO acknowledged policies spanning 1984–1990 and disclaimed "any defense or indemnification obligation" for a claimant who alleged injury-in-fact prior to this time period.  Osias Certification, Ex. 7, Dkt. No. 174-4.  On August 5, 1991, a OneBeacon claims analyst sent a letter to Fulton's counsel acknowledging policies covering plaintiff from 1981 to 1983 and advising that OneBeacon would be liable only for claims of injury-in-fact during that policy period.  Osias Certification,

Ex. 6, Dkt. No. 174-4.  An August 30, 1991, letter from an AMICO claims representative to Fulton's counsel noted that AMICO had "previously disclaimed coverage for these cases as exposure dates predate our policies."  Green Certificate, Ex. 1, Dkt. No. 190-2.  This letter further indicated that "Fulton would be responsible for their [sic] share of defense for the uninsured years and/or years where they [sic] could find no policies of coverage."  Id.

As the number of Asbestos Claims increased, so did Fulton's awareness that the insurers intended to seek contribution from plaintiff.  At his November 2009 deposition, Fulton's owner, Ronald Bramley Palm, Jr., stated that "[f]rom '95 forward to this day, there's clearly been more and more pressure applied through more and more letters from insurance companies stating that they don't want to pay or they want us to pay in various forms."  Osias Certification, Ex. 4, Dkt. No. 174-4, 55:10–14.  Further, the 2001 proposed cost-sharing agreement, drafted by AMICO and provided to Fulton, noted that "[n]othing contained herein has, or shall be construed to have, any application to the indemnification for any Asbestos Bodily Injury Claims or any other kind of claim that has been or may be asserted against Fulton."  2001 Proposal, ¶ 1(A).

By these communications, OneBeacon and AMICO made clear, early in and throughout the litigation, that Fulton was liable for indemnity costs related to claims of injury-in-fact occurring during any uninsured years.  This prevents Fulton from now declaring that it reasonably relied on the insurers to forever cover such costs.  Indeed, Fulton admittedly contributed $18,200 toward a settlement in December 2005.[13]

---

[13]  Fulton's claim that it was pressured into contributing to this settlement is unpersuasive.  The executives at Fulton who decided to contribute were competent, sophisticated businessmen who had been dealing with the Asbestos Claims for well over a decade by 2005.

Additionally, Fulton fails to establish that it was prejudiced by the defense strategy. The insurers cannot be faulted for acknowledging a duty to defend and providing a defense. These defendants have the same financial interest as Fulton in mitigating all costs related to the Asbestos Claims.  Further, pursuant to the cost-sharing agreement, the defendants paid all defense costs and are legally obligated to continue to do so.  See Fulton Boiler Works, Inc., 2010 WL 1257943.  OneBeacon and AMICO, the carriers with the largest share of liability, took the lead on the defense, secured counsel, and hired a claims administration company.  Despite its disagreement with the decision to settle cases, Fulton dismissed its monitoring counsel in 2001 because it was "comfortable" with the defense being provided by the insurers.  See Osias Certification, Ex. 30, Dkt. No. 174-5 (noting that plaintiff's initial concern for whether it would be "fairly represented" by the insurers had "proven to be a groundless fear").  Moreover, Fulton points to capital improvements it made between 1995 and 2005 to evidence its detrimental reliance on defendants' indemnification.  However, this is precisely the time period in which—according to Ronald Bramley Palm, Jr.—the insurers applied increasing pressure on Fulton to contribute to payments.

Finally, the parties dispute the extent of Fulton's involvement in the underlying cases. Plaintiff asserts that it has no influence on defendants' decision to summarily settle cases, and its "no-settle" policy is routinely ignored.[14]  Rose Esorsevy, who managed the Fulton account from January 2002 through September 2005 for the third-party claims administrator, noted that defendants "selected defense counsel, controlled how the defense was

---

[14]  After dismissing its monitoring counsel in July 2001, Fulton did not have independent counsel to advise on the legal ramifications of settling cases as opposed to proceeding to trial.  Further, Fulton acknowledges that its monitoring counsel "was a matrimonial lawyer with no experience in mass tort/product liability litigation."  Pl.'s Omnibus Reply Br., Dkt. No. 206, 10 n.4.  As such, Fulton's strict "no-settle" policy may have been legally unrealistic and ultimately not in the company's best interest.

conducted, and decided whether to settle, when and for how much."  Osias Certification, Ex. 18, Dkt. No. 174-5, ¶ 4.  In response, defendants point to evidence that contradicts Ms. Esorsevy's testimony.  The record also supports defendants' assertion that defense counsel elicits technical support from Fulton representatives, who often provide input prior to the settlement of claims.  Thus, Fulton is not entitled to summary judgment based on equitable estoppel.

### E.  <u>Post-1993 Allocation of Indemnity Costs</u>

Fulton asserts that it cannot be allocated a share of indemnity costs for the years after 1993 because liability coverage for asbestos risks was unavailable in the insurance market. OneBeacon and AMICO acknowledge that they did not offer such coverage after 1993 and do not seek indemnification from Fulton for post-1993 claims.  However, Travelers disputes the unavailability of asbestos liability insurance post-1993.[15]

The Second Circuit has held that an insured cannot be allocated a share of liability for "years after 1985 when asbestos liability insurance was no longer available."  <u>Stonewall Ins. Co.</u>, 73 F.3d at 1203.  That Fulton maintained such insurance until asbestos exclusions were added in 1993 does not impact the realistic availability of asbestos liability insurance thereafter.  Travelers does not put forth a serious counter-argument.

Accordingly, plaintiff's motion regarding allocation of indemnity costs for post-1993 years will be granted.  Specifically, Fulton cannot be allocated any share of indemnity costs for the portion of a claimant's injury-in-fact—which began prior to October 1, 1993—that

---

[15]  Confusingly, "Travelers also joins in the argument set forth at Point III (A) of [AMICO]'s Opposition Brief to Plaintiff Fulton Boiler Works, Inc.'s Motions for Partial Summary Judgment (Dkt. No. 190)."  Travelers Reply Mem. of Law, Dkt. No. 204, 2 n.2.  Point III(A) of AMICO's brief notes, inter alia, "no insurer-party in this case is seeking to have Fulton held liable for policy years after 1993."  AMICO Resp. Mem. of Law, Dkt. No. 190, 4–5.

continues after October 1, 1993.  This has no impact on Fulton's obligation to pay, without

indemnification from defendants, for claims alleging injury-in-fact beginning after October 1,

1993.  See id. at 1204 n.19 ("As to such claims, none of the Insurers is 'on the risk,' and no

issue of proration arises.").

### F. Travelers' Obligations[16]

Travelers argues that it has no obligation to defend or indemnify Fulton for any claims

it was not provided proper notice of.  Travelers also asserts that it was not obligated to

disclaim coverage pursuant to New York State Insurance Law § 3420(d).[17]  AMICO,

OneBeacon, and Wausau seek contribution from Travelers for its pro rata share of defense

and indemnity payments made after October 10, 2001, when they allege Travelers received

notice of the underlying claims.

### 1. Notice of Claims

The parties dispute whether Travelers received sufficient notice of underlying

Asbestos Claims.  Travelers asserts that, despite repeated requests, it has never been

provided with documents that constitute proper notice of underlying Asbestos Claims.  The

remaining parties maintain that Travelers received proper notice of the underlying claims by

---

[16] Fulton seeks an order declaring that the terms of the three-year policy extended to plaintiff by Travelers are identical to those outlined in the 1979 renewal policy.  However, this argument need not be addressed as Travelers acknowledges "[t]he 1976–1979 policies are deemed to contain the same insuring agreement and definitions as the 1979–1980 Policy."  Travelers Mem. of Law, Dkt. No. 170-2, 2 n.3.  Similarly, OneBeacon's argument that Travelers issued a total of four years of coverage to Fulton is mooted by Travelers concession that it extended coverage from 1976 to 1980.

[17] Travelers further maintains that the six-year statute of limitations bars AMICO from seeking reimbursement for any payments it made prior to November 9, 2000, and OneBeacon from seeking reimbursement for payments made prior to July 23, 2001—six years prior to the date on which AMICO and OneBeacon filed their respective third-party complaints against Travelers.  However, AMICO and OneBeacon only seek reimbursement from Travelers for payments made after Travelers was allegedly put on notice of the claims by letter dated October 10, 2001.  Therefore, Travelers' statute of limitations argument is moot.

way of an October 10, 2001, letter from AMICO as well as other communications with Fulton and the defendant insurers.

The policy between Travelers and Fulton provides the following regarding notice:

> In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof and the names and addresses of the injured and of available witnesses shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable.

> If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

Gerber Certification, Ex. L, Dkt. No. 180, 13, ¶¶ 4(a)–(b).

Compliance with an insurance policy's notice provisions "is a condition precedent to the insurer's liability under the policy." Webster ex rel. Webster v. Mount Vernon Fire Ins. Co., 368 F.3d 209, 214 (2d Cir. 2004). If an insured fails to comply with notice provisions without a valid excuse, "the insurer is relieved of its duty not only to indemnify, but also to defend the insured." New York v. Blank, 27 F.3d 783, 793 (2d Cir. 1994). Moreover, a successive insurer seeking to benefit from the presence of another insurer "must ensure that the notice provisions of the insured['s] policy with the second insurer are complied with." Id. at 794; see also Cont'l Cas. Co. v. Emp'rs Ins. Co. of Wausau, 85 A.D.3d 403, 407 (N.Y. App. Div. 1st Dep't 2011) ("Where an insured gives only one of two insurers timely notice of a claim, the insurer that received notice may obtain reimbursement from the other insurer only if it gives the other insurer notice of the claim that is reasonable under the circumstances." (citation omitted)).

Travelers first learned of the Asbestos Claims in an October 10, 2001, letter from AMICO. This letter indicated that AMICO and OneBeacon believed Travelers had issued

insurance policies to Fulton in the 1970s and requested that Travelers perform a search for such policies.  Koval Aff., Ex. 1, Dkt. No. 172-3.  The letter further noted:  "Enclosed, is one complaint with Fulton listed as a defendant.  There are 14,000+ complaints total for this insured.  If you would like copies of these now or at a further date, if policies are determined, we will be willing to provide you these complaints."  Id.  While this correspondence may be sufficient notice of the claim referenced in the enclosed complaint, it is arguably insufficient to constitute proper notice of the remaining 14,000+ claims.  See Cont'l Cas. Co., 85 A.D.3d at 407–08 (letter to insurer referring to one specific claim and advising that thousands of other claims existed was insufficient to satisfy notice requirements as to the thousands of outstanding claims).  However, this does not preclude a finding that Travelers was provided with sufficient notice, through other means, of claims that were outstanding in October 2001.

The October 10, 2001, letter is not the only correspondence that provided notice to Travelers.[18]  Travelers was sent numerous letters identifying Fulton as "Our Insured."  See, e.g., Gerber Certification, Ex. Y, Dkt. No. 182, 2–3, 10–12, 36–37, 46–47, 54–55, 58–60.  Attached to each of these letters was a list of recently received asbestos-related claims.  The lists included the names of the plaintiffs who filed the claims, the associated docket numbers, and the dates they were filed.  These communications adequately identified the insured, provided the names of the injured parties, informed Travelers that the occurrences were related to asbestos exposure, and were provided to Travelers within a reasonable time.  Even if these letters were not accompanied by a copy of the complaints, Brian Cocuzzo,

---

[18]  The defendant insurers' argument that Travelers received proper notice via invoices for legal fees related to the Asbestos Claims is unpersuasive.  Generally, invoices are submitted only after a claim is handled.  Therefore, the invoices indicate that Travelers was notified of the claims after legal services had been rendered.

Travelers' claims handler who began working on the Fulton account in June 2007, advised that "it would be natural for [him] to follow up and get a copy of the complaint."  Green Certificate, Ex. 1, Dkt. No. 172-4, 28–29 ("Cocuzzo Dep.").  These letters thus satisfied the notice provisions.

Moreover, Travelers received numerous letters indicating it had been provided with summonses and complaints for specific claims in a timely fashion.  See, e.g., Gerber Certification, Ex. Y, 10, 13–20, 26–29, 36, 42–46, 48, 52–54, 56–58, 60.  These letters belie Travelers' assertion that the parties repeatedly refused to provide copies of the underlying complaints.

Indeed, Travelers' own representations suggest it received proper notice of many underlying Asbestos Claims.  In a March 19, 2002, letter to Fulton, Travelers acknowledged receipt of claims involving "[n]umerous New York Asbestos Plaintiffs."  Gerber Certification, Ex. Q, Dkt. No. 181.  In an April 4, 2005, letter to Ms. Esorsevy, Travelers represented that it would "participate in Fulton's defense of the lawsuits listed in Attachment A."  Gerber Certification, Ex. R, Dkt. No. 181.  Attachment A—an eighteen-page single-spaced document—listed the names of plaintiffs involved in underlying Asbestos Claims, their state of residence, the venue of the underlying claim, and the alleged period of exposure.  Id.  This letter establishes that Travelers was aware of the identity of the insured, the names of the injured parties, and the time, place, and circumstances of the alleged occurrences.  This is the exact information contemplated by the notice provision in the policy.  Finally, Mr. Cocuzzo noted that he "usually" receives a cover letter and copy of the complaint from Fulton's claims administrator after a new claim is received.  Cocuzzo Dep., 8.  He also advised that Travelers has received approximately 2200 claims and keeps hard copies of the complaints in a

storage area on site.  Id. at 10, 22.  Travelers has clearly received proper notice of many underlying claims.

Therefore, to the extent Travelers seeks an order declaring that it did not receive proper notice of the underlying Asbestos Claims, such a motion will be denied.  Similarly, the other insurers' motion for an order declaring that Travelers must contribute to all defense and indemnity payments made after October 10, 2001, will be denied.  Travelers must contribute its pro rata share of defense and indemnity costs based on the four years of acknowledged coverage, 1976–1980, for claims of which it received, within a reasonable time, a complaint and/or letter identifying Fulton as the insured and any reasonably obtainable information regarding the injured parties and the nature of the occurrences.  This will require a case-by-case analysis of the underlying claims and documents provided to Travelers.  By way of direction, the letters identified above (contained in Exhibit Y of the Gerber Certification), which were sent to Travelers within several days of receipt of an underlying claim, constitute sufficient notice.

### 2.  <u>Disclaimer Pursuant to New York Insurance Law § 3420(d)(2)</u>

The defendant insurers also disagree as to whether New York Insurance Law § 3420(d) applies to contribution claims between successive insurers and, if so, whether Travelers complied with same.

"[A]n insurer's obligation to disclaim coverage as to a particular insured does not arise until that insured has provided notice of the occurrence or claim."  <u>Webster</u>, 368 F.3d at 214. An insurer's duty to provide a written disclaimer of coverage within a "reasonable time" pursuant to section 3420(d)(2) is triggered after the insured provides notice of the bodily injury claim.  <u>See id</u>. at 215.  A letter written by one insurer and provided to a successive

insurer on behalf of a mutually insured party is also sufficient to trigger the successive insurer's duty to disclaim.  J.T. Magen v. Hartford Fire Ins. Co., 64 A.D.3d 266, 269 (N.Y. App. Div. 1st Dep't), appeal dismissed, 13 N.Y.3d 889 (N.Y. 2009).  An insurer's failure to disclaim within a reasonable time after receiving notice bars that insurer from later denying coverage.  Webster, 368 F.3d at 215.

As explained above, Travelers received proper notice of many underlying Asbestos Claims through correspondence sent on Fulton's behalf.  Therefore, it was obligated to disclaim coverage, if applicable, within a reasonable time after receiving the notice. Travelers argues that it effectively disclaimed coverage via the affirmative defenses asserted in its answers to AMICO's and OneBeacon's third-party complaints.  However, just as the October 10, 2001, letter from AMICO did not serve as proper notice for every underlying Asbestos Claim, Travelers' answers do not amount to a blanket disclaimer of coverage for all claims, much less a timely one.  Further, Travelers filed the answers on May 24, 2007, and May 21, 2008, respectively.  See Dkt. Nos. 31, 48.  Even if the answers constitute proper disclaimer, they would be untimely as a matter of law for all claims Travelers received notice of prior to at least April 2007.  See Guzman v. Nationwide Mut. Fire Ins. Co., 62 A.D.3d 946, 947 (N.Y. App. Div. 2d Dep't 2009) (fifty-one-day delay in disclaiming coverage unreasonable as a matter of law); W. 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co., 290 A.D.2d 278, 279 (N.Y. App. Div. 1st Dep't 2002) (thirty-day delay unreasonable as a matter of law). Travelers was aware of the identity of the insured as well as the nature of many underlying claims and the alleged dates of asbestos exposure.  It thus had sufficient information to issue a written disclaimer based on, inter alia, untimely notice or injury-in-fact occurring outside the policy period.

Travelers does not put forth any evidence to show it disclaimed coverage for particular underlying claims in a timely manner.  Therefore, Travelers is barred from now disclaiming coverage for any of the claims for which it received proper notice.  Going forward, Travelers, as well as the other insurers, must timely disclaim coverage—if appropriate—in accordance with New York Insurance Law § 3420(d)(2).

## IV. CONCLUSION

Liability for each underlying Asbestos Claim must be prorated according to the time each defendant insurer provided coverage during the overall time period the injury-in-fact was occurring.  Further, Fulton must be assigned a pro rata share of indemnity costs for any portion of a particular claimant's injury that occurred between 1949 and October 1976, when Fulton did not have asbestos liability coverage.  Fulton may not invoke equitable estoppel to prevent defendants from seeking contribution related to this uninsured period.  However, Fulton cannot be assigned any share of indemnity costs for injuries-in-fact occurring before October 1, 1993, and continuing thereafter.  Fulton is solely liable for indemnity costs for any injuries-in-fact occurring after October 1, 1993.  Travelers must contribute its pro rata share of defense and indemnity costs, based on its four years of acknowledged coverage, for claims of which it received proper notice.  Moreover, because Travelers did not disclaim coverage within a reasonable time, it is barred from now disclaiming coverage for claims of which it received proper notice.

This order is not intended to definitively resolve any individual Asbestos Claims.  Indeed, no individual claims against Fulton are pending in this action.  This order shall instead serve, in conjunction with the March 25, 2010, order, as direction for the parties going forward.  These two orders resolve all declaratory matters raised by the parties and provide

the "ground rules" by which the parties are now bound as they resolve past, pending, and future Asbestos Claims.  Moreover, the equitable estoppel and declaratory judgment causes of action brought by Fulton in its amended complaint, as well as its request for fees related to this action, have all been addressed by these two orders.  The remaining cause of action for breach of contract is rendered moot by the binding nature of these orders on the defendant insurers.

Therefore, it is

ORDERED that

1.  Defendant Travelers Casualty & Surety Company's motion for summary judgment (Dkt. No. 170) is GRANTED (plaintiff Fulton Boiler Works, Inc. must contribute a pro rata share of indemnity costs for injuries-in-fact occurring during years it was uninsured);

2.  Defendants American Motorists Insurance Company and American Manufacturers Mutual Insurance Company's motion for partial summary judgment (Dkt. No. 172) is GRANTED in part and DENIED in part (Defendant Travelers Casualty & Surety Company must contribute a pro rata share of defense and indemnity costs related only to claims for which it received proper notice as defined in Part III.F.1 of this order);

3.  Plaintiff Fulton Boiler Works, Inc.'s motion for partial summary judgment (Dkt. No. 174) is GRANTED in part and DENIED in part (plaintiff Fulton Boiler Works, Inc. cannot invoke the doctrine of equitable estoppel to prevent defendants from seeking a pro rata share of indemnity costs for injuries-in-fact occurring between 1949 and October 1976, when it was uninsured, but plaintiff Fulton Boiler Works, Inc. may not be allocated any share of indemnity costs for injuries-in-fact that started occurring after October 1976 but before October 1, 1993, even if the injury-in-fact continued thereafter);

4.  Defendant OneBeacon Insurance Company's motion for partial summary judgment (Dkt. No. 175) is GRANTED (plaintiff Fulton Boiler Works, Inc. must contribute a pro rata share of indemnity costs for injuries-in-fact occurring during years it was uninsured);

5.  Defendant OneBeacon Insurance Company's motion for partial summary judgment (Dkt. No. 178) is GRANTED in part and DENIED in part (defendant Travelers Casualty & Surety Company must contribute a pro rata share of defense and indemnity costs related to claims for which it received proper notice as defined in Part III.F.1 of this order);

6.  Defendants Employers Insurance Company of Wausau and Nationwide Mutual Insurance Company's cross-motion for partial summary judgment (Dkt. No. 189) is GRANTED (plaintiff Fulton Boiler Works, Inc. must contribute a pro rata share of indemnity costs for injuries-in-fact occurring during years it was uninsured); and

7.  Defendant Travelers Casualty & Surety Company's cross-motion for partial summary judgment (Dkt. No. 193) is GRANTED in part and DENIED in part (defendant Travelers Casualty & Surety Company did receive proper notice of many underlying Asbestos Claims and must contribute a pro rata share of defense and indemnity costs for such claims).

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly and close the file.

_____

United States District Judge

Dated: December 9, 2011
           Utica, New York.